## WESTERN UNION TEL. CO. v. BOSTON SAFE-DEPOSIT & TRUST CO.

(Circuit Court, S. D. New York. June 14, 1898.)

MORTGAGE—FORECLOSURE—LEASE BY RECEIVER—RIGHT TO PROFITS.

Where a mortgage upon the property of a telegraph company is foreclosed by the trustee named therein, and 'a receiver appointed, who, with the consent of the court, leases all the mortgaged property to another company, the lessee is entitled to rents accruing to the mortgagor, during the continuance of the lease, for use of the poles and wires, as against the trustee in the mortgage, who is the obligee in a bond given to secure such rents.

This was a suit by the Western Union Telegraph Company against the Boston Safe-Deposit & Trust Company to recover rents received by defendant, as trustee.

Rush Taggart, for complainant.
Wilson & Wallis, for defendant.

TOWNSEND, District Judge.    On April 18, 1885, Edward Harland was appointed receiver in suit for the foreclosure of a mortgage of the property of the American Rapid Telegraph Company to the defendant, as trustee for bondholders.    The order appointing the receiver authorized him to obtain possession of all the property of the mortgagor, and carry on its business.    On July 10, 1885, said receiver made an agreement with the complainant, the Western Union Telegraph Company, which was approved by the court, by which agreement the complainant was authorized to collect and receive all the earnings and revenues of the property vested in said receiver, including all poles, wires, etc., during the period of the receivership, the complainant guarantying the receiver a net income of $5,000 per month.    The Bankers' & Merchants' Telegraph Company was in possession of six lines of wire between Cleveland and Chicago, strung upon poles, which poles, after litigation, were decided to belong to said mortgagor, and to be included in said mortgage; but it was directed that the United Lines Telegraph Company, then using said six wires, might retain them upon said poles until the termination of their appeal, upon their giving bond to the Boston Safe-Deposit & Trust Company in the sum of $95,000 conditioned for the payment of a rental for the use of said line of poles from Cleveland to Chicago, at the rate of $4 per mile per wire per annum, from the 23d of March, 1885, so long as they should remain on the said line of poles; provided it should finally be adjudged that the said line of poles was subject to the lien of the mortgage of the American Rapid Telegraph Company.    The United Lines Telegraph Company afterwards leased said six lines of wire to the Postal Telegraph & Cable Company, and it was finally determined that the line of poles was subject to the lien of the mortgage.    On September 1, 1889, the Postal Company, in accordance with the said final decision, surrendered said six lines of wire to the Western Union, and thereafter paid the sum of $41,218 for the rental of said poles, at the price specified in the bond, between September 1, 1889, and September 1, 1894.

In the suit by the defendant upon the bond, Judge Shipman charged the jury that the poles were a part of the line mortgaged, and that, under its contract, the Western Union had the exclusive right to any rent which might come from the use of the poles by any other party; that the $41,282 which had been received by the Western Union Telegraph Company as rent was a valid payment on account of the bond, and for that part of the bond the obligors were no longer liable. He also charged them that, if the Western Union should sue for the rents, it should sue in the name of the Boston Safe-Deposit & Trust Company, as they had the legal title, and directed them to render a verdict for the balance of the rent which had not been paid by the Postal Telegraph Company, to wit, $39,088.10. This charge of Judge Shipman seems to have decided the question at issue. The defendant in this action claims to be entitled to hold all the rents secured by the bond against the Western Union, and this contention would seem to be well founded if it is entitled to hold any of them; but, if it is entitled to hold all of them, the payment of $41,282 allowed by Judge Shipman would not have constituted a defense to any part of the bond. The settlement of the final accounts of the receiver without mention of this fund, the terms of the order declaring the termination of the contract between the receiver and the Western Union, and the ruling that the Postal Telegraph Company, in surrendering said wires to the Western Union, surrendered them to the receiver, confirm this view. These wires and the use of the poles for supporting them may well be included in the term "all rentals for the use of the strung wires" in said order. It is difficult to see how any other result could be reached. It has been finally decided that the mortgagee, and therefore the receiver, was entitled to the use of these poles; hence the Western Union was entitled to use them, and to any rent which could be derived from them. The Boston Safe-Deposit & Trust Company is a mere trustee, and, after the appointment of a receiver, could have no further right to take or hold the rents. The bond was properly made in the name of that company, but those who were beneficially entitled to the money were entitled to the benefit of any suit brought upon the bond. Let judgment be rendered in accordance with the prayer of the complainant.